IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                              No. CR 09-2475 JB

LORETO DE JESUS MENDEZ-VELARDE,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Defendant's Objection to Presentence Investigative Report, filed April 25, 2011 (Doc. 61)("Objections"); and (ii) the Defendant's Motion for Downward Departure and for Downward Variance, filed April 25, 2011 (Doc. 62)("Sentencing Memorandum"). The Court held an evidentiary sentencing hearing on May 24, 2011. The primary issues are: (i) whether the United States Probation Office ("USPO") properly declined to apply the safety valve of U.S.S.G. § 5C1.2 and 18 U.S.C. § 3553(f) in determining the applicable Guideline sentencing range, because Defendant Loreta De Jesus Mendez-Velarde did not possess a firearm in connection with the offense of possession of drugs with the intent to distribute; and (ii) whether the Court should vary from the advisory Guideline range. Because Mendez-Velarde did not possess a firearm in connection with the offense within the meaning of U.S.S.G. § 5C1.2, the Court will sustain his objection and decrease the USPO's provided offense level by 2 levels. The Court also grants Mendez-Velarde a downward variance. The Court sentences Mendez-Velarde to 40 months in the custody of the Bureau of Prisons.

**FACTUAL BACKGROUND**

At the time of his arrest, Mendez-Velarde was twenty-one-years old. He is married and has three small children. He was found to be selling prepackaged quantities of methamphetamine out of a motel room in Farmington, New Mexico. The methamphetamine and a quantity of cocaine base were contained in a small lock box. The lock box also contained a handgun. Mendez-Velarde contends that he did not pack the box or decide what would go in the box. He did not put the gun in the box; he did not take the gun out of the box. He received the box and its contents from his superior within the organization. Mendez-Velarde never touched the gun. He did not expect or request the gun. The gun was not loaded.

At the time of his arrest, Mendez-Velarde had been involved in the drug selling organization for fifteen days and had been selling in Farmington for only one day. It is not clear whether he had ever sold any drugs before the one day he was in Farmington. Mendez-Velarde has no other criminal history.

**PROCEDURAL BACKGROUND**

On December 20, 2010, Mendez-Velarde pled guilty with a plea agreement to a one-count Information charging him with violating 21 U.S.C. § 841(a)(1) and (b)(1)(A), Possession With Intent to Distribute More than 50 Grams of Methamphetamine. The plea agreement stipulated that Mendez-Velarde "may be eligible for the 'safety valve' provisions set forth in 18 U.S.C. § 3553(f)(1-5) and U.S.S.G. § 5C1.2" Plea Agreement at 3, filed December 20, 2010 (Doc. 51). The USPO disclosed a Presentence Investigation Report ("PSR") for Mendez-Velarde, calculating Mendez-Velarde's offense level to be 31 and his criminal history category to be I. Because Mendez-Velarde is subject to a mandatory minimum sentence of 120 months, pursuant to U.S.S.G. § 5G1.1, the PSR calculates his guideline imprisonment range to be 120 to 135 months.

On April 25, 2011, Mendez-Velarde filed both his Sentencing Memorandum and his Objections. Mendez-Velarde objects and requests that the Court decrease his offense level because: (i) he did not possess a gun within the meaning of safety-valve eligibility under U.S.S.G. § 5C1.2 and 18 U.S.C. § 3553(f), and the PSR thereby incorrectly failed to award him a 2-level decrease in his offense level; (ii) he was not awarded a "minimal" participant role under U.S.S.G. § 3B1.2, which would provide a 4-level decrease; and (iii) he was not awarded an additional 2-level reduction under U.S.S.G. § 2D1.1(a)(5) for being a minimal participant. Mendez-Velarde further asks the Court for a downward variance to a sentence of 40 months, requesting that the Court take into consideration his youth, lack of criminal history and experience, his young family, his economic circumstances, his children's need for a relationship with their father, and that he will be deported following his sentence.

On May 11, 2011, the United States filed its Response to Defendant's Sentencing Memorandum and Objections to the Presentence Investigative Report. See Doc. 64 ("Response"). The United States defers to the Court to determine whether Mendez-Velarde is safety-valve eligible under U.S.S.G. § 5C1.2. The United States further asserts that Mendez-Velarde is not eligible for a role reduction under U.S.S.G. § 3B1.2, because he was arrested alone and is the only person listed in his Complaint and Indictment. The United States accordingly argues that, because he is ineligible for a role reduction, he cannot be awarded a downward adjustment under U.S.S.G. § 2D1.1(a)(5). The United States also notes that, if the Court decreases Mendez-Velarde's offense level 2 levels under U.S.S.G. § 5C1.2, then his offense level will be below 32, which would also make him ineligible for a downward adjustment under U.S.S.G. § 2D1.1(a)(5).

The Court held an evidentiary sentencing on May 24, 2011. Mendez-Velarde testified at the hearing that he knew that the lock box would contain drugs, but he did not know that it would

contain a firearm. He testified that he did not place the gun into the lock box, he does not know how the gun came to be in the lock box, he did not know that there would be a gun in the lock box, and he never touched the gun. See Transcript of Hearing at 5:23-7:22 ("Tr.")(Acton, Mendez-Velarde).[1] On cross-examination, Mendez-Velarde testified that he was going to take the box to another person to sell the drugs and that he was not going to remove the gun from the box before delivering it. See Tr. at 9:6-10:15 (Rozzoni, Mendez-Velarde). Mendez-Velarde's attorney, Gregory Acton, withdrew Mendez-Velarde's second and third objections, conceding that "it does not appear that the mitigating role adjustment would apply, because . . . the sentence is based solely on his involvement with quantities that he was personally involved with, and, therefore, that role adjustment would not apply." Tr. at 8:15-22 (Court, Acton).

## ANALYSIS

The Court concludes that Mendez-Velarde did not possess the handgun within the meaning of U.S.S.G. § 5C1.2 and will therefore decrease Mendez-Velarde's offense level by 2 levels. The Court overrules the other two objections. The Court also grants Mendez-Velarde a downward variance. The Court sentences Mendez-Velarde to 40 months incarceration.

**I    THE COURT, PURSUANT TO U.S.S.G. § 5C1.2(A)(2), GRANTS MENDEZ-VELARDE A 2-LEVEL DECREASE IN HIS OFFENSE LEVEL.**

The PSR assesses a 2-level increase against Mendez-Velarde for possessing a firearm, because a Colt .380 caliber handgun was found in the same lock box where the methamphetamine and cocaine base were found. See PSR ¶ 24, at 7. Mendez-Velarde does not object to this increase under U.S.S.G. § 2D1.1(b)(1), which provides that, "[i]f a dangerous weapon (including a firearm)

---

[1] The Court's citations to the transcript are to the Court Reporter's original, unedited version. Any final version may have slightly different line or page numbers.

was possessed, increase by 2 levels." U.S.S.G. § 2D1.1(b)(1). The PSR declined to apply the safety-valve provision, noting that, although Mendez-Velarde denied knowledge of the gun, "there is no information available which suggests the firearm was not connected with the offense." PSR ¶ 25, at 7. Mendez-Velarde contends that, because he did not place the firearm in the lock box, know that it would be in the lock box, touch the firearm, or request the firearm, he is entitled to a 2-level downward adjustment under U.S.S.G. § 5C1.2(a)(2). The United States responds that, "if this court accepts that statement by Defendant, he should then be awarded a 2-level reduction for safety valve under U.S.S.G. § 5C1.2." Response at 2. The Court concludes that Mendez-Velarde has shown, by a preponderance of the evidence, that the gun was not connected to the offense, and the Court sustains his objection and decreases his offense level by 2-levels.

U.S.S.G. § 5C1.2 provides:

**(a)** Except as provided in subsection (b), in the case of an offense under 21 U.S.C. § 841, § 844, § 846, § 960, or § 963, the court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence, if the court finds that the defendant meets the criteria in 18 U.S.C. § 3553(f)(1)-(5) set forth below:

**(1)** the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines before application of subsection (b) of 4A1.3 (Departures Based on Inadequacy of Criminal History Category);

**(2)** the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

**(3)** the offense did not result in death or serious bodily injury to any person;

**(4)** the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; and

**(5)** not later than the time of the sentencing hearing, the defendant has

>truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.
>
>**(b)** In the case of a defendant (1) who meets the criteria set forth in subsection (a); and (2) for whom the statutorily required minimum sentence is at least five years, the offense level applicable from Chapters Two (Offense Conduct) and Three (Adjustments) shall be not less than level 17.

U.S.S.G. § 5C1.2. The guidelines further proved that "[i]f the defendant meets the criteria set forth in subdivisions (1) to (5) of subsection (a) of § 5C1.2 (Limitation on Applicability of Statutory Minimum Sentences in Certain Cases), decrease by 2 levels." U.S.S.G. § 2D1.1(b)(16). The parties do not dispute that Mendez-Velarde has no criminal history, that his offense did not result in death or serious bodily injury to any person, that he was at the bottom of the organization, and that he fully disclosed. The issue before the Court is whether Mendez-Velarde "use[d] . . . or possess[ed] a firearm . . . in connection with the offense." U.S.S.G. § 5C1.2(a)(2).

In United States v. Zavalza-Rodriguez, 379 F.3d 1182 (10th Cir. 2004), the United States Court of Appeals for the Tenth Circuit distinguished between the standard that applies to a sentence enhancement for possession of a dangerous weapon under U.S.S.G. § 2D1.1 and safety-valve eligibility under U.S.S.G. § 5C1.2(a)(2). The Tenth Circuit "conclude[d] that a finding that a § 2D1.1 sentence enhancement applies does not necessarily preclude a finding that a § 5C1.2 sentence reduction also applies." 379 F.3d at 1183. In United States v. Zavalza-Rodriguez, the defendant was found in a bedroom with narcotics, distribution materials, and a firearm:

>On December 6, 2002, while executing a warrant to search the house of Jose Esteves, who had recently been murdered, Bernalillo County Sheriff's officers found the defendant, Esteban Zavalza-Rodriguez, occupying a bedroom where he states he spent one night. At the house, the officers discovered narcotics, materials used to

> package narcotics, five firearms, and a large amount of cash. A loaded .45 caliber semiautomatic pistol was found in the bedroom where Zavalza was lodging. Urging that the gun was not his, Zavalza requested that the gun be fingerprinted, which the officers declined to do. Zavalza admitted to selling heroin for Esteves and claimed to have been living in the United States for about one month. He explained that he had left his home in Las Varas, Nayarit, Mexico and entered the United States illegally in pursuit of a construction job, only to find himself faced with a job selling narcotics for Esteves. Rather than return to his home, he agreed to work for Esteves.

379 F.3d at 1183-84. The defendant entered into a plea agreement, which stipulated to a 2-level sentencing enhancement for the presence of the handgun in the bedroom where he was staying. The district court, "[n]oting the absence of fingerprint evidence linking the gun to the defendant and a lack of evidence regarding how long Zavalza had lived at the residence," found that the defendant met his burden of demonstrating, by a preponderance of the evidence, that the gun was not connected to the offense, and sentenced the defendant "without regard to the statutory minimum sentence pursuant to § 5C1.2." 379 F.3d at 1184. The United States appealed, arguing that, because the defendant pled to possession of a weapon for purposes of § 2D1.1(b)(1), it necessarily follows that he was ineligible to be sentenced in accordance with the U.S.S.G. § 5C1.2's safety valve. The Tenth Circuit affirmed:

> There may be a seeming inconsistency when, on the one hand, a court applies a sentence enhancement for possessing a weapon for purposes of § 2D1.1(b)(1) and, on the other hand, also finds that a sentence reduction applies for not possessing a weapon for purposes of § 5C1.2(2). We find persuasive the Sixth Circuit's reasoning in rejecting a per se rule that would exclude eligibility for sentence relief under § 5C1.2(a)(2) when § 2D1.1(b)(1) also applies: "It does not deductively follow from a defendant's failure to satisfy a higher quantum of proof on a particular issue that he cannot satisfy a lower quantum of proof on that same issue." United States v. Bolka, 355 F.3d 909, 914 (6th Cir.2004) (holding that a § 2D1.1(b)(1) enhancement does not preclude application of the safety valve). It simply does not logically follow that the government's ability to show by a preponderance of the evidence that a weapon "was possessed" proximate to the offense entails that a defendant cannot show by a preponderance of the evidence that the weapon was not possessed in "*connection with the offense*." Nor is there any logical contradiction in our referring to a weapon possessed for purposes of a sentence enhancement with one outcome and then referring to that same weapon for purposes of a sentence reduction with a

different outcome.

> We conclude, therefore, that sentence enhancement pursuant to § 2D1.1(b)(1) does not foreclose sentence reduction pursuant to § 5C1.2(a)(2). The scope of activity covered by § 2D1.1 is broader than the scope of activity covered by § 5C1.2. For purposes of § 2D1.1 constructive possession, either physical proximity or participation in a conspiracy, is sufficient to establish that a weapon "was possessed." Whereas for purposes of § 5C1.2 we look to the defendant's own conduct in determining whether the defendant has established by a preponderance of the evidence that the weapon was not possessed "in connection with the offense."
>
> Where § 2D1.1 applies, of course, it will frequently be the case that a defendant who falls under the broader scope of § 2D1.1 will not qualify for a § 5C1.2 reduction because the weapon was actively possessed. Where, however, a defendant falls within the broader scope of § 2D1.1 when the weapon "was possessed" in the passive voice, it will sometimes be the case that the defendant will simultaneously fall within the § 5C1.2 exception because the defendant did not "possess a firearm . . . in connection with the offense" in the active voice. See In re Sealed Case, [105 F.3d 1460, 1462-63 (D.C.Cir.1997)]. This possibility is precisely what one would expect when the scope of each provision forms different, but overlapping, categories of prohibited behavior in circumstances in which a weapon is proximate to the principal offense.

379 F.3d at 1187-88 (emphasis in original).

Analogizing to caselaw addressing whether a coconspirator's gun can be attributed to a defendant under U.S.S.G. § 5C1.2(a)(2), the Tenth Circuit concluded that the defendant did not possess the firearm connection with the offense:

> We have previously held that a defendant may constructively conspire to "possess" a weapon for purposes of a sentence enhancement, while not actually possessing the same weapon "in connection with the offense" such as to preclude application of the safety valve. We defend this seeming anomaly by explaining that while a § 2D1.1(b)(1) sentence enhancement applies to a defendant for a co-conspirator's possessing a weapon, a defendant is not precluded from receiving a safety valve reduction based on the defendant's individual conduct. United States v. Pena-Sarabia, 297 F.3d 983, 988-89 (10th Cir. 2002); United States v. Clavijo, 165 F.3d 1341, 1343-44 (11th Cir. 1999) (holding that it is error to conclude that "because the co-defendant's firearm was attributed to Clavijo under section 2D1.1(b)(1), it necessarily follows that the same firearm would be attributed to Clavijo under section 5C1.2(a)(2)"); United States v. Wilson, 105 F.3d 219, 222 (5th Cir. 1997) (concluding that the defendant must have actually possessed a weapon to preclude the safety valve, and thus "in determining a defendant's eligibility for the

> safety valve, § 5C1.2(a)(2) allows for consideration of only the defendant's conduct, not the conduct of his co-conspirators"); In re Sealed Case (Sentencing Guidelines' "Safety Valve"), 105 F.3d 1460, 1462-63 (D.C. Cir. 1997) (holding that the co-defendant's possession of a weapon does not preclude application of the safety valve and noting the difference between the passive voice "was possessed" in § 2D1.1(b)(1) and the active voice requiring the defendant to do the possessing in § 5C1.2(a)(2)). Such cases make clear that we focus on the defendant's own conduct for purposes of evaluating eligibility for the safety valve, and that we recognize a distinction between constructive and actual possession. This recognition allows a court to refer to the same weapon that "was possessed" by the defendant for purposes of § 2D1.1(b)(1) as a weapon that the defendant did not "possess . . . in connection with the offense" for purposes of § 5C1.2(a)(2), without any taint of contradiction in the use of "possess." Although conspiracy was not charged in the information, Zavalza's situation is closely analogous to the facts of these cases.

379 F.3d at 1183-84.

"[L]ook[ing] to the [Mendez-Velarde's] own conduct in determining whether [he] has established by a preponderance of the evidence that the weapon was not possessed 'in connection with the offense,'" the Court concludes that Mendez-Velarde was in possession of the gun, but he did not possess the gun in connection with the offense. Like the defendant in United States v. Zavalza-Rodriguez, Mendez-Velarde did not actively possess the gun that was in the lockbox. He did not request that gun, and he did not know that it would be in the box. He never touched the gun or took steps to possess it. There is no fingerprint evidence connecting Mendez-Velarde to the gun. Mendez-Velarde testified that he planned to pass the lock box, with the gun, to another person, which suggests that he may have had an active involvement with the weapon; however, he did not pass the gun along, and the facts in the PSR indicate that he was selling the drugs out of the lock box. The Court therefore concludes that, while there is some evidence that Mendez-Velarde actively possessed the gun, the preponderance of the evidence supports finding that he did not possess the firearm in connection with the offense. Pursuant to U.S.S.G. § 5C1.2, the Court sentences Mendez-Velarde without regard to the statutory minimum sentence, and adjusts his offense level by 2 levels

downward.  See U.S.S.G. § 2D1.1(b)(16)("If the defendant meets the criteria set forth in subdivisions (1) to (5) of subsection (a) of § 5C1.2 (Limitation on Applicability of Statutory Minimum Sentences in Certain Cases), decrease by 2 levels.").

## II.     THE COURT GRANTS MENDEZ-VELARDE A DOWNWARD VARIANCE.

Mendez-Velarde requests a downward variance to a sentence of 40 months.  The Court will grant Mendez-Velarde's request.  Mendez-Velarde withdrew his other objections at the hearing, so the Court overrules them.  There being no other objections to the PSR's factual findings and sentencing calculations, the Court adopts them as its own, subject to the Court's 2-level downward adjustment for safety-valve eligibility and without application of the mandatory minimum.  With the 2-level downward adjustment, Mendez-Velarde has an offense level of 29, which, with a criminal history category of I, provides a guideline sentence of 87 to 108 months.

The Court notes the Mendez-Velarde possessed with the intent to distribute approximately 82 grams of methamphetamine actual and approximately 26 grams of cocaine base.  The Court further notes the defendant possessed a Colt .380 caliber handgun with serial number ML01133. The Court has carefully considered the guidelines, but in arriving at its sentence the Court has also taken account of not only the guidelines but other sentencing goals.  Specifically, the Court has considered the guideline sentencing range established for the applicable category of offense committed by the applicable category of defendant, and the Court, after carefully considering the briefs in this case, the PSR, and also the evidence and arguments presented at the hearing, has concluded that the punishment that is set forth in the guidelines is not appropriate for this sort of offense.  The Court has considered the kinds of sentence and range the guidelines establish, and the Court believes that a variance is appropriate in this case.  Mendez-Velarde was involved in the drug trade for a short period, and he played a rather insignificant role.  He does not appear to have had

much control over the quantity of drugs he received.  The ease and speed with which Mendez-Velarde was caught will likely deter him from attempting to traffic drugs in the future.  Moreover, Mendez-Velarde is a young man.  He was twenty-one-years old at the time of his arrest.  He has no other criminal history.  He is married with three children, who range in age between two and seven years, and he will be deported following his sentence.  The Court believes a sentence of 40 months is appropriate in this case.  The Court believes a sentence of 40 months adequately reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence, protects the public, and otherwise fully reflects each of the factors embodied in 18 U.S.C. § 3553(a).  While the Court's task, as a district court, is not to arrive at a reasonable sentence -- it is to come up with one that reflects the factors in 18 U.S.C. § 3553(a), see United States v. Conlan, 500 F.3d 1167, 1169 (10th Cir. 2007)("[A] district court's job is not to impose a reasonable sentence.  Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2).")(citation omitted) -- the Court believes this sentence is reasonable and more so than one within the sentencing guideline range.  Finally, the Court believes the sentence adequately reflects Mendez-Velarde's lack of criminal history, and that this sentence is sufficient without being greater than necessary to comply with the purposes of punishment Congress set forth in the Sentencing Reform Act.

      **IT IS ORDERED** that the Court sustains in part and overrules in part the Defendant's Objection to Presentence Investigative Report, filed April 25, 2011 (Doc. 61), and grants in part and denies in part the Defendant's Motion for Downward Departure and for Downward Variance, filed April 25, 2011 (Doc. 62), and sentences Defendant Loreta De Jesus Mendez-Velarde to 40 months in the custody of the Bureau of Prisons.

                                                                      _____
                                                                       UNITED STATES DISTRICT JUDGE

*Counsel:*

Kenneth J. Gonzales
  United States Attorney
Jon K. Stanford
  Assistant United States Attorneys
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*


Gregory M. Acton
Albuquerque, New Mexico

      *Attorney for the Defendant*